UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BATTLE BORN MUNITIONS, INC.,<br><br>       Plaintiff,<br> v.<br><br>DICK'S SPORTING GOODS, INC.,<br><br>       Defendant. | Case No. 3:19-cv-00561-MMD-CLB<br><br>ORDER |

**I. SUMMARY**

Plaintiff Battle Born Munitions, Inc. seeks to represent a putative class of vendors of Defendant Dick's Sporting Goods, alleging violations of Nevada's Deceptive Trade Practices Act, NRS § 598.0903 to 598.0999 ("NDTPA") and fraud in the inducement, in a commercial dispute arising from Defendant's alleged late payments for large shipments of bullets. However, Plaintiff already sued Defendant in a case arising out of the same facts that is still pending in the Western District of Pennsylvania, *Battle Born Munitions, Inc. v. Dick's Sporting Goods, Inc.*, Case No. 2:18-cv-01418-NBF (W.D. Pa. Filed Oct. 23, 2018) (the "PA Case"). While this order resolves several motions currently before the Court,[1] it focuses on Defendant's motion for summary judgment arguing this case is barred under the doctrine prohibiting claim splitting ("Motion").[2] (ECF No. 54.) Because the Court agrees with Defendant this case is barred under the anti-claim splitting doctrine,[3] and as further

---

[1](ECF Nos. 9, 10, 17, 21, 51, 55.) The Court also reviewed the responses, replies, and related errata corresponding to these motions. (ECF Nos. 16, 19, 20, 22, 26, 28, 29, 31, 32, 38, 50, 52, 53, 56, 58.)

[2]Plaintiff filed a response (ECF No. 57), and Defendant replied (ECF No. 60).

[3]The Court uses the phrasing 'anti-claim splitting doctrine' though some other courts call it the claim splitting doctrine or the prohibition on claim splitting because the caselaw makes clear claim splitting is undesirable, and the doctrine is meant to discourage

explained below, the Court will grant the Motion, deny the other pending motions as moot, and dismiss this case.

**II.     BACKGROUND**

   **A. Factual Background**

Plaintiff filed the PA Case against Defendant in October 2018, and this case in September 2019. The parties and factual allegations in the complaints in both cases are the same. (*Compare* ECF No. 1 *with* ECF No. 54-2.) More specifically, and to provide the factual background for this case, the Court describes below the material facts alleged in each complaint.

Plaintiff entered into a written agreement—"Vendor Agreement"—with Defendant to provide bullets to Defendant packaged and branded as "Field and Stream," a brand owned by Defendant. (ECF No. 1 at 3-4; ECF No. 54-2 at 2.) Relying on the Vendor Agreement, Plaintiff purchased nearly $4.5 million worth of bullets. (ECF No. 1 at 4; ECF No. 54-2 at 3-4.) Plaintiff expected Defendant to take delivery of these bullets in November 2016, but Defendant did not take delivery of them until August 2017. (ECF No. 1 at 4-5; ECF No. 54-2 at 3.) Plaintiff's claims arise from Defendant's delayed acceptance of delivery of the bullets.

As a result of the delay, Defendant did not pay Plaintiff when Plaintiff expected to be paid. That also meant that Plaintiff had to hold onto all of the bullets in the meantime. This, in turn, caused Plaintiff to incur costs it would not have otherwise incurred. (ECF No. 1 at 5; ECF No. 54-2 at 4-5.)

Plaintiff also alleges that later, when Defendant did pay Plaintiff, Defendant did not pay Plaintiff the full amount it expected to be paid, because Defendant applied certain chargebacks and an allegedly inapplicable discount to the amounts it paid Plaintiff. (ECF No. 1 at 5; ECF No. 54-2 at 4-5.) Moreover, Plaintiff alleges Defendant required it to take

---

it. *See, e.g.*, *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007) (mentioning the "doctrine against claim-splitting").

out an insurance policy for longer than it would have had to if Defendant accepted delivery of the bullets in November 2016. (ECF No. 1 at 5; ECF No. 54-2 at 5.) Plaintiff thus alleges it incurred damages of inappropriate discounts totaling $108,462, chargeback deductions of $14,608, warehousing costs of $45,125, and insurance premium costs of $32,743. (ECF No. 1 at 5; ECF No. 54-2 at 5.)

Moreover, Plaintiff alleges that it made a deal to sell 12 Bell helicopters to the government of Lebanon around the same time, from which Plaintiff would have profited $5,224,000, but Plaintiff was unable to sell the helicopters to Lebanon because the capital it needed for that deal was tied up in the bullets it was warehousing for Defendant. (ECF No. 1 at 8-9; ECF No. 54-2 at 5-7.) Plaintiff therefore also sought, or seeks, lost profits damages of $5,224,000. (ECF No. 1 at 8-9; ECF No. 54-2 at 5-7.) The parties refer to these damages as the 'Helicopter Damages.' For ease of reference, the Court will as well.

While both cases share these common factual allegations, Plaintiff brings slightly different claims in the two cases. In the PA Case, Plaintiff sued Defendant for breach of contract, fraudulent inducement, and negligent misrepresentation. (ECF No. 54-2 at 9-11.) Plaintiff later amended its claims in the PA case to include a claim of a violation of the Restatement (Second) of Torts § 552. (ECF No. 54-3 at 14-15.) As mentioned *supra*, in this case, Plaintiff brings claims for fraud in the inducement and violation of the NDTPA, and seeks to represent a class of other vendors it suspects were similarly mistreated by Defendant. (ECF No. 1.)

**B.  Procedural History**

The procedural history of the PA Case is also important here. First, on Defendant's motion (ECF No. 54-4), United States District Judge Nora Barry Fischer of the Western District of Pennsylvania dismissed all of Plaintiff's claims except the breach of contract claim on May 3, 2019 (ECF Nos. 54-7, 54-8). In pertinent part, Judge Fischer found that Pennsylvania law governed the relationship between the parties per the terms of the Vendor Agreement, Plaintiff's non-contractual claims were barred because the duties Defendant allegedly breached were created by the express terms of the parties' contract

3

and did not arise independently of the contract, and Plaintiff's claims seeking incidental, consequential, and lost profit damages (including the Helicopter Damages) on its breach of contract claim were barred by the terms of the Vendor Agreement. (ECF No. 54-7 at 8-17.) Second, after first filing a proposed second amended complaint without the requisite motion accompanying it, Plaintiff filed a motion for leave to amend its complaint, primarily to add class action allegations. (ECF No. 54-9 (proposed second amended complaint), 54-10, 54-11, 54-12, 54-13.) Judge Fischer denied Plaintiff's motion to amend on October 22, 2019 because it was untimely, and she found that Plaintiff failed to demonstrate good cause to excuse its late filing. (ECF No. 54-14 at 6-9.) She wrote in pertinent part that Plaintiff's "untimely actions in seeking leave to add the class action claims are, at best, attributable to attorney error or legal strategy such that neither diligence nor good cause have been shown." (*Id.* at 7.) She also noted that Plaintiff conceded "that it knew about the potential class action claims from the beginning of this litigation [in the fall of 2018] and concedes that it failed to adhere to this Court's September 1, 2019 deadline to file motions for leave to amend and add new parties." (*Id.*)

Third, Defendant filed a motion to enjoin Plaintiff from proceeding with this case under the first filed rule in the PA Case. (ECF No. 54-15 at 2.) Judge Fischer denied that motion on February 4, 2020.[4] (*Id.*) She found that "Defendant has failed to meet its burden that this Court should exercise its discretionary power under the first filed rule to issue the extraordinary relief of an injunction barring Plaintiff" from prosecuting this case. (*Id.*) Judge Fischer further found that the first filed rule did not bar this case because Plaintiff asserts a class action claim under the NDTPA in this case, which Plaintiff did not assert—and as to the class action aspect of Plaintiff's Complaint in this case, was not allowed to assert—in the PA Case. (*Id.* at 3.) Judge Fischer also noted that no court had yet adjudicated

---

[4]Defendant attached a copy of Judge Fischer's order to its Motion. (ECF No. 54-15.) Plaintiff previously filed a motion for leave to supplement its response to Defendant's earlier filed motion to dismiss with a copy of Judge Fischer's same order denying Defendant's motion to enjoin. (ECF No. 51.) The Court will deny Plaintiff's motion for leave to supplement as moot because Judge Fisher's order denying Defendant's motion to enjoin in the PA Case is before the Court in connection with Defendant's Motion.

4

Defendant's argument in the PA Case that Plaintiff's claim under the NDTPA must fail because Plaintiff had already admitted, and Judge Fischer had already found, that Pennsylvania law governed the parties' relationship. (*Id.* at 3-4.) Judge Fischer finally noted that she did not believe an injunction prohibiting this case was the best procedural mechanism to address the duplicative nature of this case, as this Court has other options that may be more effective. (*Id.* at 4.)

Meanwhile, Plaintiff had filed this case on September 10, 2019—after Judge Fisher granted Defendant's motion to dismiss in the PA Case, but before she denied Plaintiff's motion to amend to add class action allegations in that case, and denied Defendant's motion to enjoin Plaintiff from prosecuting this case. (ECF No. 1; *see also* ECF Nos. 54-7, 54-8, 54-14, 54-15.) And while this order represents the first time the Court has taken any action in this case, the parties have filed several motions. In addition, Magistrate Judge Carla L. Baldwin stayed discovery in this case pending Judge Fischer's resolution of Defendant's motion to enjoin in the PA Case (ECF No. 48)—though that stay was lifted after Judge Fischer denied Defendant's motion to enjoin (ECF No. 50), and Defendant filed another motion to stay discovery pending resolution of its Motion, which is currently pending (ECF No. 55).

The Court now briefly describes the pending motions beyond the Motion that are not otherwise addressed herein. They center on Defendant's related arguments that this Court either lacks jurisdiction over this case, or that Judge Fischer is better situated to resolve the dispute between the parties. Defendant first raised these sorts of arguments in simultaneously-filed motions to dismiss (ECF No. 9), and change venue (ECF No. 10). In addition to responding to these motions (ECF No. 16),[5] Plaintiff countered with a motion

---

[5]Plaintiff concurrently filed a motion to seal (ECF No. 17) with its response (ECF No. 16) to Defendant's motions to dismiss (ECF No. 9) or transfer venue (ECF No. 10). Defendant does not oppose the motion. (ECF No. 26.) Specifically, Plaintiff seeks to file the Vendor Agreement under seal. (ECF No. 17 (seeking to seal Exhibit 6 to the response—the Vendor Agreement).) However, no copy of the Vendor Agreement was filed under seal with either the response or the motion to seal. As Plaintiff's local counsel should be aware, the practice in this district is to file the document you seek to seal under seal,

5

for leave to conduct jurisdictional discovery (ECF No. 21). Defendant's Motion can be conceptualized as presenting a similar, though distinct, argument from those presented in its earlier motions to dismiss or change venue. Again, in its Motion, Defendant moves for early summary judgment without discovery, arguing this case should be dismissed as duplicative of the PA Case under the anti-claim splitting doctrine. (ECF No. 54.)

### III.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once

---

accompanied by a motion to seal. *See* LR IA 10-5(a). So what Plaintiff did here is not in line with normal practice in this district. Moreover, as a logical matter, Plaintiff never filed a copy of the Vendor Agreement with the Court. Thus, there is nothing to seal. The Court will therefore deny Plaintiff's motion to seal (ECF No. 17) as moot.

the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**IV.    DISCUSSION**

Defendant's only argument in its Motion is that this case is barred under the anti-claim splitting doctrine. (ECF No. 54.) Plaintiff counters that this case is not barred because its claims are not identical to those it asserted in the PA case, and an exception to the anti-claim splitting doctrine—where the "plaintiff is unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief"—applies here. (ECF No. 57 at 2, 8.) The Court agrees with Defendant.

The anti-claim splitting doctrine prohibits duplicative litigation. *See Fairway Rest. Equip. Contracting, Inc. v. Makino*, 148 F. Supp. 3d 1126, 1129-30 (D. Nev. 2015). It is similar to claim preclusion, but applies when the first suit has not yet been resolved. *See Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688-89 (9th Cir. 2007), *overruled on other grounds in Taylor v. Sturgell*, 553 U.S. 880, 904 (2008) (as stated in *Ross v. Bd. of Trustees of California State Univ.*, 741 F. App'x 442 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 149 (2019)); *see also Phillips v. Salt River Police Dep't*, 586 F. App'x 381 (9th Cir.

2014) (confirming the Ninth Circuit continues to apply the anti-claim splitting doctrine as laid out in *Adams* even after *Taylor*). Under the anti-claim splitting doctrine, "[a]fter weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Adams*, 487 F.3d at 688.

To determine whether the anti-claim splitting doctrine applies here, the Court must "examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id.* at 689. There is no dispute here that the parties are the same between this case and the PA Case. Thus, the question is whether the causes of action and relief sought are the same. *See id.* "To ascertain whether successive causes of action are the same, we use the transaction test, developed in the context of claim preclusion." *Id.* In applying the transaction test, the Court must consider four factors, where the fourth factor is the most important:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* (citation omitted); *see also See Fairway*, 148 F. Supp. 3d at 1130 (applying the same transaction test and eventually finding the anti-claim splitting doctrine barred claims).

Applying the transaction test to the facts of this case, and the procedural history of the PA Case, the Court finds the causes of action and relief sought are the same in this case as in the PA Case. As the parties are also the same, that means the anti-claim splitting doctrine applies here. *See Adams*, 487 F.3d at 688-94 (affirming the district court's decision, on abuse of discretion review, to dismiss the duplicative case where the claims satisfied the transaction test and parties had sufficient privity); *see also Phillips*, 586 F. App'x at 381 (affirming dismissal of the duplicative case "because the causes of action, relief sought, and parties are the same in both actions.").

To start, the fourth and most important factor of the transaction test favors finding the claims in this case duplicative of the claims in the PA Case because both cases arise out of the same transactional nucleus of facts. *See Adams*, 487 F.3d at 689 (listing this as the most important factor). That much is clear from comparing the factual allegations in the complaints in both cases, as the Court did *supra* in Section II. Both cases arise from the contractual relationship between Plaintiff and Defendant embodied in the Vendor Agreement, and Plaintiff's dissatisfaction with Defendant's conduct as to the Vendor Agreement. (ECF No. 54 at 9-10 (detailing the similarity in allegations and arguing persuasively that means both cases arise from the same transactional nucleus of facts).) Moreover, because the facts are the same, the evidence presented will also be the same across the two cases. Thus, the second factor also favors finding the claims in this case duplicative of the claims in the PA Case. Plaintiff's argument to the contrary—that this case focuses on Defendant's pre-contractual conduct, rather than its post-contractual conduct, which is the focus of the PA case—is simply unsupported by the factual allegations in the two complaints, which focus on the same events and conduct. (ECF No. 57 at 7; *compare* ECF No. 1 *with* ECF No. 54-2.)

The first factor also favors finding the claims in this case duplicative. As to the first factor, Plaintiff makes clear in its response to the Motion that it wants to litigate this case primarily to seek Helicopter Damages. (ECF No. 57.) Plaintiff spends much of its response arguing that the Vendor Agreement allows for consequential damages arising from fraud, and explains that Plaintiff needs this litigation in this Court because it is unable to recover those damages in the PA Case. (*Id.* at 3-5, 7.) But Plaintiff's characterization of the unavailability of those damages in the PA Case is disingenuous. Consequential damages, which the Court understands from Plaintiff's response to the Motion to mostly mean Helicopter Damages, are not mysteriously unavailable in Pennsylvania federal court, as Plaintiff seems to imply. Rather, Judge Fischer ruled on the merits of Plaintiff's claims that those damages are unavailable to Plaintiff. (ECF No. 54-7 at 16-17.) This case is Plaintiff's transparent attempt at a second bite at the apple—especially considering that Plaintiff filed

9

this case after Judge Fisher ruled Plaintiff could not recover Helicopter Damages. (*Compare* ECF Nos. 54-7, 54-8 (filed May 3, 2019) *with* ECF No. 1 (filed September 10, 2019).) Moreover, Judge Fischer denied Plaintiff's request to amend its complaint to include class allegations in the PA Case, because the request was untimely, which Judge Fischer attributed to either attorney error or a strategic mistake. (ECF No. 54-14 at 6-9.) Plaintiff includes class action allegations in its Complaint. (ECF No. 1.) Thus, allowing this case to proceed would destroy at least two interests established in the PA Case, where Defendant was successful—through Judge Fischer's rulings—in preventing Plaintiff from potentially recovering Helicopter Damages, and from asserting class action allegations. The first *Adams* factor thus also favors findings Plaintiff's claims in this case duplicative. *See Adams*, 487 F.3d at 689 (listing this as the first factor). The Court also notes the factual similarity between this case and *Adams* as to this factor, where the Ninth Circuit affirmed the dismissal of a second case as duplicative when Plaintiff asserted claims in a second case after she was denied leave to amend her complaint to include those claims in the first case. *See id.* at 687-88.

As to the third factor—whether the two suits involve infringement of the same right—the Court finds Defendant's argument more persuasive than Plaintiff's. (ECF Nos. 54 at 10, 57 at 7.) *See also Adams*, 487 F.3d at 689 (listing this as the third factor). Defendant argues that the right is the same in both cases: the right to "timely delivery and payment and the damages [Plaintiff] suffered when [Defendant] allegedly violated the terms of the parties vendor agreement and purchase orders." (ECF No. 54 at 10.) Plaintiff replies that the rights are different because the damages sought are different. (ECF No. 57 at 7.) But that is inaccurate. Plaintiff initially sought the same damages in both cases. The difference is that Judge Fischer already ruled Plaintiff cannot recover Helicopter Damages in the PA Case. (ECF No. 54-7 at 16-17.) In contrast, Defendant's description of the right Plaintiff seeks to enforce in both cases is more reasonable, and very much the same in both cases. The third factor thus also favors finding Plaintiff's claims in this case duplicative of its claims in the PA Case.

The Court thus concludes that all four factors listed in *Adams* favor finding this case duplicative of the PA Case. And because the parties are the same, the anti-claim splitting doctrine applies to this case.

Plaintiff makes two additional arguments in an attempt to resist this conclusion. Neither is persuasive. Plaintiff first argues the anti-claim splitting doctrine does not apply here because Judge Fischer found the first-to-file rule did not bar this case in denying Defendant's motion to enjoin in the PA Case. (ECF No. 57 at 2.) To the contrary, the Court finds Defendant's reliance on *Ameritox, Ltd. v. Aegis Scis. Corp.*, Case No. CIV.A.3:08-CV-1168-D, 2009 WL 305874 (N.D. Tex. Feb. 9, 2009) persuasive as to this argument. (ECF No. 54 at 10-12 (explaining the similarities between *Ameritox* and this case, and arguing why the Court should find it persuasive in ruling this case is barred by the anti-claim splitting doctrine despite Judge Fischer having denied the motion to enjoin in the PA Case).) In *Ameritox*, as in this case, the district judge in the first-filed action denied a motion to enjoin the second action, in which the plaintiff attempted to assert a Lanham Act claim not asserted in the first case primarily because the district judge in the first case had denied a prior motion for leave to amend the complaint in the first case to add a Lanham Act claim. *See Ameritox*, 2009 WL 305874, at *1-*2, *6. The *Ameritox* district court nonetheless determined that the anti-claim splitting doctrine still applied because the parties and the claims were the same between the two cases. *See id.* at *4-*5. Part of the *Ameritox* court's rationale was that doing anything other than dismissing the case under the anti-claim splitting doctrine would undermine the decisions of the court presiding over the first-filed case. *See id.* at *4-*6. That same concern is present here. The Court will not allow Plaintiff to "engage in an end-run around" Judge Fischer's decisions by allowing Plaintiff to proceed with class allegations and seek Helicopter Damages here. *See id.* at *4. Thus, like the court in *Ameritox*, the Court finds that Judge Fischer's denial of Defendant's motion to enjoin in the PA Case does not preclude the Court from dismissing this case as duplicative under the anti-claim splitting doctrine.

Plaintiff next argues an exception to the anti-claim splitting doctrine applies. (ECF No. 57 at 8-10.) But that exception, to the extent it exists, does not apply here. Even the portion of the restatement of judgments that Plaintiff relies on makes clear that the exception only applies "because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action[.]" (*Id.* at 8.) But Judge Fisher clearly has subject matter jurisdiction over the PA Case (after all, Plaintiff filed it, asserting she had jurisdiction over it), and she did entertain the remedies and forms of relief that Plaintiff seeks in this case. But, as discussed, she ruled that Plaintiff cannot recover the Helicopter Damages, and denied Plaintiff leave to amend its complaint to add class allegations. Thus, Plaintiff's argument that an exception applies here is nothing more than a repackaged request for a second bite at the apple that Plaintiff is not entitled to, and which the Court already rejected *infra* in explaining why the anti-claim splitting doctrine applies to this case.

In sum, having found the anti-claim splitting doctrine applies to this case, the Court exercises its discretion to dismiss this case with prejudice as duplicative of the PA Case. The Court will dismiss this case with prejudice because "[d]ismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the 'comprehensive disposition of litigation.'" *Adams*, 487 F.3d at 692. "In dismissing the duplicative suit with prejudice," Court will act "to protect the parties from vexatious and expensive litigation and to serve the societal interest in bringing an end to disputes." *Id.* at 693 (affirming dismissal of duplicative suit with prejudice). The parties can work to resolve the remainder of this dispute by going to trial before Judge Fischer. This Court will not interfere with her rulings or her ongoing management of the PA Case.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines

that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 54) is granted.

It is further ordered that this case is dismissed in its entirety, with prejudice, because it is barred under the anti-claim splitting doctrine.

It is further ordered that Defendant's motion to stay discovery (ECF No. 55) is denied as moot.

It is further ordered that Plaintiff's motion for leave to file a supplement (ECF No. 51) is denied as moot.

It is further ordered that Plaintiff's motion for leave to conduct jurisdictional discovery (ECF No. 21) is denied as moot.

It is further ordered that, as explained herein, Plaintiff's unopposed motion to seal (ECF No. 17) is denied as moot.

It is further ordered that Defendant's motion to change venue (ECF No. 10) is denied as moot.

It is further ordered that Defendant's motion to dismiss (ECF No. 9) is denied as moot.

The Clerk of Court is directed to enter judgment accordingly, in Defendant's favor, and close this case.

DATED THIS 16th day of April 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE